IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DARREN L. WILLIAMS, JR.,

   Petitioner,

v.

S. CARTER,[1]
*Warden*,

   Respondent.

Civil Action No.: BAH-24-1394

**MEMORANDUM OPINION**

Darren L. Williams, Jr., a federal prisoner previously incarcerated at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, seeking the application of his Earned Time Credits ("ETCs") pursuant to the First Step Act of 2018 ("FSA"), P.L. 115-391, § 102(b)(1), 132 Stat 5194, 5210 (Dec. 21, 2018). ECF 1, at 6. While Williams has since been transferred to prerelease custody (*see* ECF 13), he states that he was unable to have his earned ETCs applied to his sentence due to "some type of bias," (ECF 1, at 2), and because he had a high risk of recidivism at the time he filed the Petition (ECF 1-1).

Pursuant to the Court's Order directing Respondent to file a response to the Petition (ECF 3), Respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF 7). After being advised of his right to respond (ECF No. 9), Williams filed an opposition response (ECF 11) to which Respondent replied (ECF 12).

---

[1] The Clerk shall be directed to amend the docket to reflect the correct name of the Respondent, Warden Rokosky. *See* ECF 7, at 1 n.1.

Having reviewed the papers, and finding no hearing necessary, *see* Md. Loc. R. 105.6 (D. Md. 2023), the Court grants Respondent's Motion to Dismiss or, in the Alternative, for Summary Judgement, and denies the Petition for Writ of Habeas Corpus.

I.     **Background**

On December 16, 2016, Williams plead guilty to one count of being a felon in possession of a firearm and was sentenced to a term of imprisonment of 51 months to be served concurrently with a 12-year sentence he was serving in the Kentucky Department of Corrections. ECF 1. On January 19, 2022, Williams completed his state sentence and was transferred to the custody of the Federal Bureau of Prisons ("BOP") to complete the remainder of his federal sentence. *Id*. at 2. Williams contends that though he has earned 230 days or more of ETCs, these have not been applied due to his classification level and asserts that he has been "denied any meaningful opportunity to reduce [his] classification during the period of [his] incarceration." *Id*. at 3. Williams asks that this Court order BOP to award him the credits. *Id*. His current projected release date is September 1, 2025. ECF 7-1, at 5.

Respondent argues that the FSA precludes the application of Williams' ETCs because he has been assessed at a high risk of recidivism. ECF 7, at 1. ETCs are only applied when a prisoner has been assessed as a low or minimum risk of recidivism over two assessment periods using the Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *Id*. at 7. Further, Respondent avers that the BOP's determination that Williams is not eligible for application of his ETCs is not reviewable by this Court. *Id*. at 10. And finally, Respondent contends, Williams fails to state a claim, as Williams has no protected liberty interest in the application of ETCs. *Id*. at 14.

2

## II.     Standards of Review

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (§ 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. . . . However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v.*

*Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

### III. Discussion

The First Step Act allows inmates to earn early release credits for participation in certain programming. 18 U.S.C. § 3621(h). Respondent provides an overview of the statutory and policy framework around the First Step Act, which was passed on December 21, 2018, and amended, 18 U.S.C. §§ 3621, 3624. ECF 7, at 2–6. The First Step Act required the Attorney General to:

> (1) conduct a review of the existing prisoner risk and needs assessment systems in operation on the date of enactment of this subchapter;
>
> (2) develop recommendations regarding evidence-based recidivism reduction programs and productive activities in accordance with section 3633;
>
> (3) conduct ongoing research and data analysis on—
>
> > (A) evidence-based recidivism reduction programs relating to the use of prisoner risk and needs assessment tools;
> > (B) the most effective and efficient uses of such programs;
> > (C) which evidence-based recidivism reduction programs are the most effective at reducing recidivism, and the type, amount, and intensity of programming that most effectively reduces the risk of recidivism; and
> > (D) products purchased by Federal agencies that are manufactured overseas and could be manufactured by prisoners participating in a prison work program without reducing job opportunities for other workers in the United States;
>
> (4) on an annual basis, review, validate, and release publicly on the Department of Justice website the risk and needs assessment system, which review shall include—

>   (A) any subsequent changes to the risk and needs assessment system made after the date of enactment of this subchapter;
>
>   (B) the recommendations developed under paragraph (2), using the research conducted under paragraph (3);
>
>   (C) an evaluation to ensure that the risk and needs assessment system bases the assessment of each prisoner's risk of recidivism on indicators of progress and of regression that are dynamic and that can reasonably be expected to change while in prison;
>
>   (D) statistical validation of any tools that the risk and needs assessment system uses; and
>
>   (E) an evaluation of the rates of recidivism among similarly classified prisoners to identify any unwarranted disparities, including disparities among similarly classified prisoners of different demographic groups, in such rates;
>
> (5) make any revisions or updates to the risk and needs assessment system that the Attorney General determines appropriate pursuant to the review under paragraph (4), including updates to ensure that any disparities identified in paragraph (4)(E) are reduced to the greatest extent possible;

18 U.S.C. § 3631(b)(1)–(5).

The Attorney General developed the PATTERN tool in consultation with the Director of the BOP, the Director of the Administrative Office of the United States Courts, the Director of the Office of Probation and Pretrial Services, the Director of the National Institute of Justice, the Director of the National Institute of Corrections, and the Independent Review Committee. *See* U.S. Dep't of Justice, The First Step Act of 2018: Risk and Needs Assessment System 4 (2019). PATTERN uses both static and dynamic factors associated with a prisoner's risk of recidivism and is reviewed and validated annually as required by 18 U.S.C. § 3631(b)(4). *Id.*

PATTERN uses fifteen variables to create a score for general recidivism (defined as a return to BOP or a re-arrest within three years of release), and one to create a score for violent recidivism (a re-arrest for a suspected act of violence within three years of release from custody). *See* U.S. Dep't of Justice, 2020 Review and Revalidation of The First Step Act Risk Assessment

Tool 2 (2021).[2]  At least half of the factors are dynamic, including work programming, drug treatment while incarcerated, program completions, and financial responsibility.  *Id*.

Liberally construing the Petition, Williams contends that PATTERN violates his rights because he is unable to reduce his recidivism score low enough for his time credits to be applied to his sentence.  Williams is eligible to receive earned time credits, but due to his high PATTERN score, he cannot have those earned time credits applied to his sentence.  18 U.S.C. § 3624(g)(1)(B) (eligible prisoners have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction or [have] maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment.").  As a practical matter, he is not able to lower his risk level enough to use his credits before his projected release date in September of 2025.

Williams' position that the BOP has failed to devise a recidivism risk assessment system that allows him a meaningful opportunity to reduce his risk assessment from medium to low is unavailing.  As explained by Respondent, the reason Williams is assessed a high risk of recidivism is largely due to his current age and criminal history, neither of which can be changed.  ECF 7, at 6; *see also* 7-1, at 15.  Williams was assessed six times while in BOP custody and was assessed at a high risk of recidivism each time.  *Id.* at 12–13.  While Williams did lower his PATTERN score during his time of incarceration by participating in programs, *id*. at 15, it was not enough to change his assessment to low or minimum prior to his transfer to pre-release custody.  That Williams is

---

[2] The fifteen variables are: (1) age at the time of assessment; (2) infraction convictions within the last 120 months; (3) infraction convictions for serious and violent acts during current incarceration; (4) whether the prisoner being assessed is infraction free; (5) whether the prisoner is free of any violent or serious infractions; (6) completion of programming; (7) programming for technical and vocational training; (8) drug treatment while incarcerated; (9) noncompliance with financial responsibility; (10) whether the instant offense is violent; (11) whether the prisoner is a sex offender; (12) criminal history (13) history of violence; (14) history of escapes; and (15) education score.  ECF 7, at 3 .

unable to achieve a level that would allow the credits to be applied to his sentence before his term of imprisonment expires does not demonstrate that the PATTERN scoring system is unconstitutional. *See Green v. Hudson*, No. 23-3141, 2024 WL 960497, at *4 (10th Cir. Mar. 6, 2024) (holding that the BOP's inclusion of static factors in PATTERN did not deprive inmates of a "meaningful opportunity to reduce their classification during the period of incarceration"). To the extent that Williams contests the requirement of achieving minimum or low recidivism risk scores prior to having his earned credits applied to his sentence, such a challenge is to the statute and not the regulation. The BOP's use of the PATTERN tool to restrict application of FSA credits to prisoners with minimum or low risk recidivism scores does not amount to an agency's "interpretation" of a statute. Rather, the BOP has done what Congress commanded it to do: create a method by which it can determine whether a prisoner is likely to recidivate and to withhold FSA credits until that likelihood is diminished to a minimum or low risk.

## IV. Conclusion

For these reasons, this Court will deny Williams' request for habeas relief. Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF 7), will be granted.

A separate Order follows.

June 30, 2025  
Date

/s/  
Brendan A. Hurson  
United States District Judge